26539. WILLIAMSON *v.* THE STATE.

DECIDED JANUARY 7, 1938. REHEARING DENIED MARCH 24, 1938.

*Ellis McClelland, Thomas Howell Scott,* for plaintiff in error.
*John S. McClelland, solicitor, John A. Boykin, solicitor-general, J. W. LeCraw,* contra.

GUERRY, J. Frank Williamson was convicted in the criminal court of Fulton County, under an accusation charging him with keeping, maintaining, and operating a lottery known as the "number game." The judge of the superior court overruled his certiorari, and exceptions are taken to this judgment. The evidence introduced by the State shows that certain police officers went to a residence at 347 Angier Avenue, about three o'clock on February 2, 1937, and found it locked. They gained entrance to the house through a rear window, and immediately after entering heard some one running in the basement. They went to the basement door, forced it open, and found the defendant with Robert Green, and Carrie Sturgill. The defendant jumped in a large box in the basement and tried to hide, and the other two ran into an adjoining room. In this room the officers found 2500 yellow lottery tickets dated that day, two hand-adding machines, gem clips, and ribbons. They found $10.39 in cash on the person of Robert Green, $35.08 cash in the pocket of a lumber jacket he had hanging in the room, and $1.65 in an envelope found in the room. Lucy Hurt and her husband, B. F. Hurt, who lived at 347 Angier Avenue, testified that they rented this room to the defendant about three weeks before his arrest. Lucy Hurt further testified that after the defendant rented the room he came there every day about two o'clock, except on Saturday when he came about eleven o'clock;

·that during that time the defendant would occasionally get calls on the telephone, and he would repeat some number the party on the other end of the line would give him, such as number "347 or 865;" and that on some of the occasions of these calls she discovered that the number thus given to him was the winning lottery number for that day. The defendant denied to the officers that his name was Frank Williamson, and only after the officers went to his home several blocks away and his wife admitted his identity did he also admit it. When the officers went to his home they found $4263 in cash in a safe, and a book which the officers testified was a record used in the operation of the lottery known as the number game. The entries in the book indicated the days of the week, the amount of money taken in each day, the commissions paid out to writers of the tickets, and the number of "hits" on each day, or the number of winning tickets or their amounts. Robert Green and Carrie Sturgill testified in behalf of the defendant. They admitted that they were operating a lottery, but testified that the defendant had nothing to do with it, and that the day of the arrest was the first time he had ever been on the premises. The defendant made a statement to the jury, denying that he participated in the operation of the lottery, and declaring that he went to this house on the day of his arrest, merely to see Carrie Sturgill.

The circumstantial evidence, taken all together, is strong and convincing of defendant's guilt. As a matter of fact, the conclusion that he was guilty of operating a lottery is inescapable, if the circumstances and their legitimate inferences be considered. It may be said to be well established by both the evidence for the State and that of the defendant that a lottery was being operated at the residence where the officers arrested him. Upon hearing or seeing the officers he attempted to hide in a box, which does not portray the conduct of an innocent man. This is a very pertinent circumstance from which it may be inferred that the defendant at least knew of the operation of the lottery. While he and two witnesses who were arrested with him said that this occasion was his first visit to the residence in question, two witnesses for the State testified that this room in which the lottery paraphernalia was found was rented to the defendant about three weeks before the arrest, of which circumstance neither of the defendant's witnesses

nor the defendant himself offered any explanation; and one of the witnesses for the State testified that she saw the defendant come to this residence every day about two o'clock and stay until about three o'clock, except on Saturday, when he came about eleven o'clock. The lottery, the operation of which the defendant was convicted, has as its winning numbers the hundred thousand, ten thousand, and thousand digits of the New York Stock Exchange. It is a matter of common knowledge that the New York Stock Exchange closes at two o'clock on week days and at eleven o'clock on Saturdays. In the operation of this lottery the writers of the numbers sell the tickets and collect the money until two o'clock; then these tickets must be picked up immediately, so that no numbers will be written after that time, and they are then delivered to headquarters to tabulate the day's sales and winning numbers. It is clearly inferable from the evidence that the room in question was the place where the tabulating was done. To add another link to the chain of circumstances, the defendant was known to have received telephone calls at the residence in question, and was given numbers which proved on several occasions to be the winning lottery number for that day. Then, to add another, the officers found a book in his house several blocks away, which they testified was a record book kept in the operation of the lottery. Therein could be found the amount taken in on each day, the commissions paid out to the writers, and the number of "hits" or winning tickets for that day. Also he was found to have some $4000 in cash money in his safe. Under all of the circumstances, we can conceive of no reasonable hypothesis save that of the guilt of the defendant. The jury has so found, and we have no power to upset their finding. The State introduced in evidence the record book, the money, the adding machines, and the lottery tickets found and testified about by the officers. The defendant's objection that they had not been identified as being connected with him, and were not found in his possession, is, from what we have said, plainly without merit. Their introduction was no doubt prejudicial as alleged, but, being relevant and competent, this affords no ground for their exclusion.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*